ANNETTE KINGSLAND ZIEGLER, J.
¶ 58. {concurring in part, dissenting in part). I concur because I *29 agree with the majority's adoption of Maryland v. Shatzer, 559 U.S. 98 (2010). See majority op., ¶ 31. I dissent and write separately to discuss the majority opinion's lack of regard for the fundamental question presented in this case: what is the legal standard to be applied when a suspect makes a statement about counsel post-custody, pre-Miranda warnings, pre-interrogation, and pre-waiver of Miranda rights. Miranda v. Arizona, 384 U.S. 436 (1966). In my view, we accepted certification to answer this question. Instead, the majority opinion merely restates the previously adopted Davis standard as if Edler's statement was made post-custody, post-Miranda warnings, during interrogation, and after waiver of Miranda rights. Davis v. United States, 512 U.S. 452, 459 (1994). It was not. We should answer the fundamental question presented and provide guidance for law enforcement, courts, and counsel, as this issue is likely to recur especially in light of Shatzer and its impact on Edwards v. Arizona, 451 U.S. 477 (1981).
¶ 59. Here, the issue presented is whether, under the circumstances, Edler's question "Can my attorney be present for this?" constitutes an invocation of the right to counsel. In response to this question, Detective Urban responded "Yes he can." About 20 minutes after making that statement, Edler was read his Miranda rights. While his rights were being read, Edler interrupted Urban and stated "If the lawyer — if I request a lawyer, does that mean you still have to bring me into custody and I have to go sit in the jail?" Urban told Edler that he was already in custody and that Urban needed to read the full Miranda rights before they could talk further. Urban read Edler his Miranda rights in their entirety. Edler waived his right to counsel and made incriminating statements.
*30 ¶ 60. Approximately three weeks earlier, Edler was arrested, read his Miranda rights, and unambiguously invoked his right to counsel by stating "From this point on, I'd like to have a lawyer here." Urban scrupulously honored that request and ceased any questioning. Thus, Edler knew how to unambiguously invoke his right to counsel and knew that questioning would cease if he so requested counsel. Urban also knew that Edler was capable of invoking his right to counsel, and Urban demonstrated that he would scrupulously honor a request for counsel.
¶ 61. Simply stated, my dissent distils into the following four points, which are interrelated: (1) the majority's analysis has not adhered to the proper de novo standard of review; (2) the majority muddies the waters with respect to existing precedent, the "reset" for interrogation permitted by Shatzer, and the impact of Shatzer on Edwards; (3) the majority does not provide sufficient analysis regarding how or whether law enforcement may clarify such pre-Miranda questions from a suspect; and (4) this issue is ripe for determination so that law enforcement, litigants, and courts will know how to evaluate such statements.
I. FACTUAL BACKGROUND
¶ 62. The facts are undisputed. On March 30, 2011, Detective Urban met with Edler to discuss a burglary. Urban read Edler his Miranda rights and interrogated him, and Edler made incriminating statements about the burglary. After a short break, Urban asked Edler about two arsons that were unrelated to the burglary. At this point, Edler successfully invoked his right to counsel by stating "From this point on, I'd like a lawyer here." Urban respected Edler's invocation and ceased the interrogation. In fact, after Edler made *31 this statement, he began to talk again and Urban told him "to be quiet" because he had asked for a lawyer. In other words, in the first interrogation, Urban scrupulously honored Edler's invocation of counsel.
¶ 63. Edler spent that night in jail and requested to meet with Urban the next day. After a brief conversation about the burglary charge, Urban asked Edler if he had anything to say about the arsons. Edler responded that "I honestly don't have anything to say about that." Urban again scrupulously honored Edler's wish to remain silent.
¶ 64. On April 1, 2011, Edler was charged with burglary, made his initial appearance with an attorney from the Public Defender's office, and was released from custody on a signature bond. On April 4, 2011, Edler was appointed a public defender on the burglary charge.
¶ 65. Almost three weeks later, on April 20, 2011, Edler was arrested for arson. As Edler was being arrested, his father urged him to be honest and cooperate with the police. Edler was handcuffed, placed in the back of a squad car, and transported to the police station. Edler was not read his Miranda rights at this point. About five minutes into the 20 minute car ride to the station, Edler asked "Can my attorney be present for this?" Urban responded "Yes he can." Edler did not ask any follow up questions or make further statements about an attorney during the remaining car ride, and Urban did not ask Edler any questions about the burglary or the arsons during the car ride.
¶ 66. At the police station, Urban read Edler his Miranda rights. As Edler was read the portion of his Miranda rights regarding his right to counsel, Edler interrupted Urban and asked "If the lawyer — if I request a lawyer, does that mean you still have to bring *32 me into custody and I have to go sit in the jail?" Urban responded that Edler was already in custody and that he would be willing to discuss the issue further after reading the rights. Urban then reread the Miranda warnings in its entirety to Edler. Edler waived his rights. Urban asked Edler "realizing that you have these rights, are you now willing to answer questions?" Edler replied "yeah." Edler then made incriminating statements to Urban.
II. STANDARD OF REVIEW
¶ 67. I agree with the majority that the standard of review is two-fold. We uphold the trial court's findings of fact unless they are clearly erroneous, and we apply the constitutional principles to those facts independently while benefiting from the trial court's interpretation. State v. Hambly, 2008 WI 10, ¶ 16, 307 Wis. 2d 98, 745 N.W2d 48. 1 disagree with the majority's application of this standard of review.
¶ 68. The trial court did not engage in fact finding that required discretionary determinations regarding credibility, demeanor, or which version of the facts to accept. We accept the facts as the trial court found them. We then engage in a de novo review of the legal standard the trial court applied. Because this legal standard has never been determined, certainly no fault of the trial court, the trial court was without a specific legal standard to apply when it reached its legal conclusion. If the trial court applied the correct legal analysis, we should adopt that standard. If the trial court should have applied a different legal analysis, we should set forth that rule. The majority does neither.
¶ 69. While I do not quarrel with the majority's determination that a question such as "Can my lawyer be present for this?" could be an unambiguous request *33 for counsel under certain circumstances, another court could come to the opposite conclusion just as easily in different circumstances. Law enforcement, courts, and litigants expect our opinions to give them the necessary tools to do their jobs properly. The majority opinion does not provide that guidance. Because the mere mention of an attorney is not an invocation of counsel, it is important to clarify what about Edler's question meets a standard applicable to pr e-Miranda invocations. The majority specifically does not extend the Davis standard to this pr e-Miranda scenario,[1] it does not clarify what legal standard should be applied, nor does it conclude that this statement is always an invocation of counsel. See majority op., ¶ 35. Hence, the applicable legal standard remains unanswered for statements regarding counsel when the suspect is in custody, has not been given the Miranda warnings, is not yet being interrogated, and has not waived his or her Miranda rights.[2] See majority op., ¶¶ 2 n.2, 34 n.12. We can do better.
*34 III. PRECEDENT, SHATZER, AND OFFICER CONDUCT
A. Precedent
¶ 70. Precedent makes it less than clear that Edler's question "Can my attorney be present for this?" is sufficient to invoke his right to counsel. "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning." Davis, 512 U.S. at 459. The majority does not conclude that the question "Can my attorney be present for this?" is always an invocation of counsel. See majority op., ¶ 35. In fact, courts often conclude that such a question regarding counsel is not an invocation, even if it is asked after the Miranda warnings were given.[3]
¶ 71. For example, in State v. Ward, we concluded that where the defendant asked the police whether she should call an attorney, that question was equivocal and insufficient to invoke her right to counsel. 2009 WI 60, ¶ 43, 318 Wis. 2d 301, 767 N.W2d 236. See also, Halbrook v. State, 31 S.W.3d 301, 302-04 (Tex. Ct. App. *35 2000) (holding that the question "Do I get an opportunity to have my attorney present?" was ambiguous under Davis); United States v. Doe, 170 F.3d 1162, 1166 (9th Cir. 1999) (concluding that defendant's question "What time will I see a lawyer?" was ambiguous under Davis); United States v. Younger, 398 F.3d 1179, 1187 (9th Cir. 2005) (concluding that defendant did not sufficiently invoke his right to counsel when he asked "[b]ut, excuse me, if I am right, I can have a lawyer present through all this, right?") abrogated in part on other grounds, United States v. Vongxay, 594 F.3d 1111, 1116 (9th Cir. 2010); Commonwealth v. Redmond, 568 S.E.2d 695, 700 (Va. 2002) (holding that "Can I speak to my lawyer? I can't even talk to [a] lawyer before I make any kinds of comments or anything?" was ambiguous and equivocal, and therefore insufficient to invoke the defendant's right to counsel); Marcy Strauss, Understanding Davis v. United States, 40 Loy. L.A. L. Rev. 1011, 1035-37 (2007) (reporting that courts often conclude questions about a lawyer are ambiguous).
¶ 72. Courts frequently conclude that even fairly pointed statements about obtaining a lawyer, as opposed to questions, are nevertheless ambiguous and equivocal. For instance, the Court in Davis concluded that the statement "Maybe I should talk to a lawyer" was ambiguous and therefore did not constitute an invocation. 512 U.S. at 462. Applying Davis, we held in State v. Jennings, that the statement "I think maybe I need to talk to a lawyer" was insufficient to invoke the right to counsel. 2002 WI 44, ¶ 36, 252 Wis. 2d 228, 647 N.W.2d 142. As another example, in State v. Long, the court of appeals concluded that the defendant's statement "My attorney told me I shouldn't talk unless he is here" was an ambiguous and equivocal statement. 190 *36 Wis. 2d 386, 397, 526 N.W2d 826 (Ct. App. 1994) [4] See also State v. Parker, 886 S.W.2d 908, 918 (Mo. 1994) (concluding defendant's statement that he "ought to talk to an attorney" was not unambiguous invocation); Commonwealth v. Jones, 786 N.E.2d 1197, 1206 (Mass. 2003) (concluding defendant's statement that he was "going to need a lawyer sometime" did not constitute an unambiguous request for an attorney); Baker v. State, 214 S.W.3d 239, 243 (Ark. 2005) (concluding defendant's statements "I don't feel that I can talk to you without an attorney sitting right here to give — have them give me some legal advice" and "I think I'm going to need one. I mean, it looks like that" were ambiguous).
¶ 73. Significantly, the cases relied upon by the majority are clearly distinguishable from the facts and circumstances in the case at issue. See majority op., ¶ 36. The majority opinion relies upon Taylor and Lee to support its conclusion that "Can my attorney be present for this?" is an invocation of counsel. Taylor v. State, 553 S.E.2d 598 (Ga. 2001); United States v. Lee, 413 F.3d 622 (7th Cir. 2005). However, in both Taylor and Lee, unlike the case at hand, the statements were *37 made post-custody, post -Miranda warnings, and during interrogation. Taylor, 553 S.E.2d at 601-02; Lee, 413 F.3d at 624. Further, in Taylor and Lee, unlike the case at issue, the court relied heavily on the fact that law enforcement actually discouraged the suspects from obtaining a lawyer. Taylor, 553 S.E.2d at 602; Lee, 413 F.3d at 627. Law enforcement did not engage in any such conduct in the case at issue.
¶ 74. Other cases relied upon by the majority are likewise distinguishable especially due to the fact that the suspects' questions were asked post -Miranda warnings. In State v. Dumas, the court stated that the post -Miranda question " 'Can I get a lawyer?' could be sufficiently clear in some circumstances to meet [the Davis] standard." 750 A.2d 420, 422, 425 (R.I. 2000) (emphasis added). However, the Dumas court concluded that the defendant's question in and of itself did not amount to an invocation. It remanded the matter for the trial court to consider the circumstances surrounding the defendant's question, including "the responses of the officers and any further utterances by defendant." Id. at 425. Here, the majority does not remand this case to the trial court to consider the officer's actions and further utterances by the defendant. The majority also cites Wysinger as support for its position. United States v. Wysinger, 683 F.3d 784, 795 (7th Cir. 2012). While it is true that Wysinger cites Lee, a case wherein the post -Miranda question "Can I have a lawyer?" was deemed to be an unequivocal request for counsel, the facts in Wysinger are distinguishable from the facts before this court. Id. (quoting United States v. Lee, 413 F.3d 622, 624, 626 (7th Cir. 2005)). In fact, in Wysinger, the court concluded that the suspect's preMiranda question "Do I need a lawyer before we start talking?" was insufficient to invoke his right to counsel. *38 683 F.3d at 794-95. See also Commonwealth v. Hilliard, 613 S.E.2d 579 (Va. 2005) (holding that post -Miranda statement "Can I get a lawyer in here?" was sufficient to invoke the right to counsel).
¶ 75. I dissent because the majority opinion could be viewed as implicitly overruling well-established case law and because the cases cited by the majority opinion are distinguishable. If the majority intends to provide more protections to suspects by altering the standard to invoke the right to counsel or by tethering a subsequent interrogation to a previous arrest, the majority should make that clear.[5] In any event, the majority should outline the standard to be used when evaluating these invocations, especially given Shatzer and the likelihood that this scenario will recur. Unfortunately, the majority's decision is cabined to this one defendant's assertion, on this day, under these circumstances.
B. Maryland v. Shatzer
¶ 76. Moreover, the majority opinion adopts Shatzer but lacks a thorough discussion of Shatzer and *39 its limitation of Edwards.[6] See majority op., ¶ 31. Specifically, under Shatzer, the rule oí Edwards — that a defendant who has invoked the right to counsel is not subject to further interrogation — is not applicable if the defendant has been out of custody for 14 days. Shatzer, 559 U.S. at 111-12 ("[W]hen it is determined that the defendant pleading Edwards has been out of custody for two weeks before the contested interrogation, the court is spared the fact-intensive inquiry into whether he ever, anywhere, asserted his Miranda right to counsel."). Thus, Shatzer seemingly limited the Edwards prohibition on a subsequent interrogation. In my view, the majority opinion could be viewed as one which diminishes the holding in Shatzer because it relies so heavily on Edler's post -Miranda invocation of counsel three weeks prior and on the fact that the same officer was involved in both arrests.
¶ 77. In this case, Edler had been out of custody for 19 days when he was arrested on April 20, 2011, for arson. Under the rule of Shatzer, the break in custody operated to reset the opportunity for law enforcement to interrogate Edler. Nonetheless, the majority focuses *40 almost entirely on the previous invocation of counsel and the fact that the same officer was involved in both arrests. Majority op., ¶ 35. The analysis of whether Edler invoked his right to counsel by stating "Can my attorney be present for this?" should seemingly focus on the facts and circumstances surrounding Edler's statement as they existed on April 20, 2011, rather than a residual invocation from 21 days earlier. In relying on the facts related to the previous interrogations and on Urban's knowledge of the previous interrogations, the majority opinion could be diminishing the clean break rule of Shatzer. Instead, the majority opinion could be viewed as reviving the Edwards rule of continued invocation of counsel, despite the rule of Shatzer. I would hope for more discussion regarding the legal implications of Shatzer and of a previous invocation of counsel.
¶ 78. Given the majority's analysis, what place does Shatzer hold in our jurisprudence? Is the majority elevating the Edwards continued invocation rule over the Shatzer clean break rule? Is Wisconsin adopting its own version of Shatzer/Edwards? Does the majority conclude the question "Can my attorney be present for this?" in and of itself, is an invocation of the right to counsel? Does the majority limit its analysis to a situation where the same officer is involved in both arrests?
C. Officer Conduct
¶ 79. Similarly, the majority's analysis of how a reasonable officer would understand Edler's question turns on knowledge gained by Urban three weeks earlier, when Edler invoked his right to counsel. See majority op., ¶ 35. Because the majority makes much of the fact that Urban was involved in both interrogations, the majority opinion is further limited. Id. Unfortunately, the majority does not clarify why it is so focused on Urban's knowledge from three weeks prior.
*41 ¶ 80. Considering that the circumstances of the prior interrogation are seminal to the majority's analysis, it is curious that the majority attaches no weight to the fact that Urban scrupulously honored Edler's prior invocation. Why does the majority assume that Urban has now failed to honor a request for counsel when he previously demonstrated that he would scrupulously honor such a request? See People v. Gonzalez, 104 P.3d 98, 107 (Cal. 2005) (stating that where interrogating officers knew the suspect had been read his Miranda rights on a prior occasion, "the police could reasonably have assumed that defendant was capable of making an unequivocal request for counsel if he so desired").[7] Under the majority's analysis, Urban's knowledge that Edler was capable of invoking his right to counsel and Urban's history of honoring an invocation of counsel deserve no consideration.
¶ 81. In the earlier interrogation, Urban respected Edler's invocation by ceasing the interrogation, and when Edler made further statements, Urban acknowledged the invocation and told Edler "to be quiet" because he had invoked his right to counsel. In this subsequent arrest, about five minutes into the car ride, Edler asked "Can my attorney be present for this?" Urban responded "Yes he can." Compared to the earlier response, Urban's latter response suggests that he understood Edler to be asking a question about his rights rather than invoking his right to counsel.
*42 ¶ 82. Unlike law enforcement in Taylor and Lee, Urban did not attempt to dissuade Edler from obtaining a lawyer. Edler asked "Can my lawyer be present for this?" about five minutes into the 20 minute car ride before any interrogation.[8] Here, Urban could very well have understood Edler to be asking a question about his rights.
¶ 83. Under Davis and Jennings, an officer is not required to stop an interrogation or to ask follow up questions about counsel if the suspect makes an ambiguous statement about an attorney, but this court has suggested that it is a good practice. See Jennings, 252 Wis. 2d 228, ¶ 32. Should we adopt a rule requiring law enforcement to clarify such pre-Miranda questions? Again, the majority opinion passes on this opportunity to provide such guidance to law enforcement.
¶ 84. From Urban's perspective, the statement made by Edler at the police station, whether he would *43 sit in jail if he requested a lawyer, likely clarifies that Edler did not invoke his right to counsel in the car. The majority opinion lacks any analysis of Edler's question regarding counsel at the station, during the time when Urban was reading the Miranda warnings, or his waiver of his Miranda rights. The majority does not consider how Urban made clear that he was not going to engage in discussion with Edler until he finished reading him his rights and Edler waived his rights. The majority does not discuss how Edler, not Urban, reinitiated the conversation by asking Urban a question. Urban was not interrogating Edler during the car ride or while he was reading the Miranda warnings.
¶ 85. As Edler had an attorney on a pending burglary charge, his question "Can my attorney be present for this?" may have been clarifying whether that particular attorney could be present for the forthcoming interrogation, even though he did not yet have an attorney on the uncharged arson. He also might have been asking whether he was entitled to have any attorney present during the interrogation.
¶ 86. Given the totality of the circumstances, the majority is too quick to conclude that law enforcement would objectively know that the question "Can my lawyer be present for this?" was an unambiguous invocation of counsel and that law enforcement erred by giving Edler his Miranda rights and accepting Edler's waiver. I do not conclude that a reasonable law enforcement officer, particularly one who is aware that Edler is capable of invoking his rights, would believe that the question "Can my attorney be present for this?" was an unambiguous request for counsel. Our court should provide guidance to law enforcement by illuminating the standard applicable to a statement made post-custody, pre-Miranda warnings, pre-interrogation, and pre-waiver of Miranda rights.
*44 IV CONCLUSION
¶ 87. I readily concede that Edler's question might have been a poorly-worded request for an attorney. Under the totality of the circumstances, however, it is just as likely that Edler's question was a clarification of his rights or something else. Precedent does not require the cessation of interrogation when a reasonable law enforcement officer believes the suspect might be invoking the right to counsel. See Davis, 512 U.S. at 459.
¶ 88. I dissent because the majority opinion neither extends Davis to Edler's statement nor enunciates the standard to apply. Simply stated, the majority opinion leaves open questions that are likely to recur. The majority opinion has not concluded that the "unambiguous and unequivocal" objective standard from Davis applies post-custody, pr e-Miranda warnings, preinterrogation, and pre-waiver of Miranda rights. The majority opinion does not determine whether interrogation must be impending for a suspect to invoke his right to counsel. The majority opinion leaves open whether law enforcement must clarify a potential request for counsel under these pr e-Miranda circumstances. It remains unknown whether law enforcement should ever clarify a potential request by reading the suspect the Miranda warnings. The law is now less clear regarding the implications of Shatzer on Edwards. I write separately to highlight that our court should be analyzing these issues with regard to Edler's question, which was made post-custody, pr e-Miranda warnings, preinterrogation, and pre-waiver of Miranda rights. We should clarify the law.
¶ 89. For the foregoing reasons, I respectfully concur in part and dissent in part.

 Davis would be the rule to apply here when a suspect has been given Miranda rights, has waived them, and is being interrogated. Davis v. United States, 512 U.S. 452, 459 (1994); Miranda v. Arizona, 384 U.S. 436 (1966). Edler made no such statement regarding an attorney after he waived his Miranda rights.

 Though Wisconsin has not previously decided whether the Davis standard applies to statements made before Miranda warnings are given, other courts have faced this question. See, e.g., United States v. Rodriguez, 518 F.3d 1072, 1079 n.6, 1080 (9th Cir. 2008) (listing 10 cases that have considered the standard applicable to pr e-Miranda invocations and concluding that Davis did not supersede Ninth Circuit case law requiring clarification of ambiguous statements prior to obtaining a Miranda waiver); Harvey Gee, An Ambiguous Request for Counsel Before, and Not After a Miranda Waiver: United States v. Rodriguez, United States v. Fry and State v. Blackburn, 5 Crim. L. Brief 51 (2009) (discussing standards for pr e-Miranda invocations).

 A question, such as "Can I get a lawyer?" may be sufficiently clear to invoke the right to counsel in the right circumstances. The majority opinion should not be read to conclude that statements starting with "Can I" and including the word "lawyer" are all unambiguous and unequivocal requests for counsel. See majority op., ¶ 36. See also Marcy Strauss, Understanding Davis v. United States, 40 Loy. L.A. L. Rev. 1011, 1037 (2007) ("The question, 'Can I get a lawyer?' has received a more checkered reception. Many courts have found this type of question to be ambiguous, and a way of simply asking for clarification of one's rights."); Annual Review of Criminal Procedure, 40 Geo. L.J. Ann. Rev. Crim. Proc. 199-202 (2011).

 Two recent court of appeals cases provide persuasive authority reaffirming Wisconsin's adherence to a strict standard that a suspect must meet to invoke his or her Miranda rights. In State v. Smith, the court of appeals held that the defendant did not invoke his right to remain silent where he stated "I don't want to talk about this," referring to a specific line of questioning, but where he also indicated a willingness to continue discussing other matters. Smith, No. 2012AP520-CR, unpublished slip op., ¶¶ 8-10 (Wis. Ct. App. Jan. 23, 2013). In State v. Cummings, the court of appeals held that the defendant did not invoke his right to remain silent where he made the following statement during an interrogation: "Well, then, take me to my cell." Cummings, No. 2011AP1653-CR, unpublished slip op., ¶¶ 8-9 (Wis. Ct. App. Jan. 10, 2013).

 In some cases, the Wisconsin Constitution has been interpreted to provide greater protections than the United States Constitution. For example, in United States v. Patane, 542 U.S. 630 (2004), the Supreme Court concluded that "the fruit of the poisonous tree doctrine does not extend to derivative evidence discovered as a result of a defendant's voluntary statements obtained without Miranda warnings." State v. Knapp, 2005 WI 127, ¶ 1, 285 Wis. 2d 86, 700 N.W.2d 899. The court in Knapp concluded that under the Wisconsin Constitution, the exclusionary rule barred physical fruits obtained from a deliberate Miranda violation. Id., ¶ 2. However, this court has previously determined that "[w]e cannot discover any meaningful difference between the state and federal constitutional protections against compulsory self-incrimination." State v. Jennings, 2002 WT 44, ¶ 42, 252 Wis. 2d 228, 647 N.W.2d 142.

 Though the majority opinion describes the rule of Shatzer as a constitutional rule, the court in Shatzer states that "[w]e have frequently emphasized that the Edwards rule is not a constitutional mandate, but judicially prescribed prophylaxis." Maryland v. Shatzer, 559 U.S. 98, 105 (2010); Edwards v. Arizona, 451 U.S. 477 (1981). Logically, any changes in the Edwards rule would similarly result in judicially-prescribed rules. See also Dickerson v. United States, 530 U.S. 428, 446 (2000) (Scalia, J. dissenting) (stating that the majority opinion in Dickerson describes Miranda as a constitutional decision and as constitutionally based, but never says that violating Miranda violates the Constitution). Clearly the language in the Fifth Amendment of the United States Constitution does not reference a 14-day break in custody. These rules are instead prophylactic protections pertaining to the Fifth Amendment.

 See also State v. Markwardt, 2007 WI App 242, ¶ 36, 306 Wis. 2d 420, 742 N.W.2d 546 (stating that the rules for invocation of the right to remain silent, which are derived from Davis, do not leave room for reasonable competing inferences: "[A]n assertion that permits reasonable competing inferences demonstrates that a suspect did not sufficiently invoke the right to remain silent").

 The timing of Edler's question "Can my attorney be present for this?" could support that it was a clarification of his rights and not an invocation. See Davis, 512 U.S. at 461 (stating that the Court is "unwilling to create a third layer of prophylaxis to prevent police questioning when the suspect might want a lawyer"). For example, in State v. Fischer, before the police read the defendant his Miranda rights and before interrogation began, the defendant stated that if the officers read him his rights, he would not answer questions and would request an attorney. 2003 WI App 5, ¶ 19, 259 Wis. 2d 799,656 N.W.2d 503. The court held that a "conditional and futuristic request for counsel is a statement that a reasonable officer in light of the circumstances would have understood only that [the defendant] might be invoking the right to counsel." Id. Since Edler's statement was made 20 minutes prior to the start of interrogation, Edler's statement could be viewed as conditional and futuristic similar to the statement in Fischer. See majority op., ¶ 32 n.11 (decliningto clarify temporal standard that was left unsettled by State v. Hambly, 2008 WI 10, 307 Wis. 2d 98, 745 N.W2d 48).