In the

# United States Court of Appeals
## For the Seventh Circuit

No. 16-4094

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

WALKER L. HAMPTON,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 15-cr-40023-001 — **Sara Darrow**, *Judge.*

ARGUED FEBRUARY 28, 2018 — DECIDED MARCH 21, 2018

Before MANION, SYKES, and HAMILTON, *Circuit Judges.*

PER CURIAM. Walker Hampton was caught breaking into a
trucking business and later confessed to robbing a nearby
post office as well. He was charged in a four-count indict-
ment. He then entered a conditional guilty plea and was sen-
tenced to 132 months' imprisonment. Hampton reserved his
right to appeal two issues that he now presents, arguing: (1)
that robbing a person in lawful custody of United States prop-
erty, *see* 18 U.S.C. § 2114(a), is not a "crime of violence" under

18 U.S.C. § 924(c), and (2) that his motion to suppress his rec-orded confession should have been granted because he was questioned after he invoked his right to counsel. We affirm the judgment because Hampton's first argument is foreclosed by our precedent, and his second is meritless because Hampton did not clearly express a present desire to consult with coun-sel before talking with law enforcement.

## I.    BACKGROUND

On January 24, 2015, Hampton robbed a post office in Tay-lor Ridge, Illinois, at gunpoint. The employees handed over $34 and seven books of stamps worth $68.60. Hampton also took the employees' wallets. A month later, he was arrested after breaking into Mack Trucking in Viola, Illinois. When sheriff's deputies searched Hampton's home, they found three firearms that he was not allowed to possess because of a prior felony conviction. Two of the guns had been stolen.

After arresting Hampton, the deputies took him to the Mercer County Sheriff's Office. Deputy Eric Holton, Deputy Dusty Terrill, and Deputy Jessie Montez sat down to talk with Hampton. Terrill first gave an introduction and informed Hampton that they were recording the conversation. Hamp-ton interjected and said: "Actually, I want to change that. I haven't even gotten a chance to get a lawyer or anything."

At that point, Terrill left the room to turn off the video re-corder and then, according to Holton's uncontradicted testi-mony at the suppression hearing, went back into the room and explained to Hampton why they wished to record the *Mi-randa* process. Holton and Terrill left the room and discussed for five to ten minutes whether Hampton had invoked his right to counsel. They concluded that he had not. The officers

then returned and, with the recorder still off, advised Hampton of his rights. At some point during that discussion, Hampton said: "Maybe I should have a lawyer." Terrill explained that Hampton had the right to have an attorney present. Holton did not recall exactly what Hampton said in response, but he testified that he and his colleagues interpreted it as permission to continue the interview and record it. Hampton does not contest that he was informed of his rights, and that he agreed to proceed with the interview without counsel.

The recording resumed. After Terrill read Hampton his *Miranda* rights, Hampton signed a form saying he understood those rights and waived them. Hampton then confirmed that he had not been threatened or received any promises while the recording was off. Hampton confessed to stealing scrap metal, copper tubing, and wires from empty houses and an old school, but he denied robbing the post office. After a laborious ninety minutes of questioning, Hampton confessed to the post office robbery.

A grand jury indicted Hampton for robbing federal property, *see* 18 U.S.C. § 2114(a), brandishing a firearm during a crime of violence, *see* 18 U.S.C. § 924(c)(1)(A)(ii), being a felon in possession of firearms, *see* 18 U.S.C. § 922(g)(1), and possessing stolen firearms, *see* 18 U.S.C. § 922(j).

Before trial Hampton moved to dismiss the § 924(c) charge because, he argued, robbery of federal property is not a crime of violence since it can be accomplished by "intimidation." The district judge denied the motion.

Hampton also moved to suppress his confession. Hampton contended that he unequivocally invoked his right to counsel by saying "Actually, I want to change that, I haven't

even gotten a chance to get a lawyer or anything." The district judge denied the motion because she found the statement ambiguous.

Hampton entered into a plea agreement but reserved his right to appeal the denial of his motions to dismiss and to suppress.

## II.    ANALYSIS

On appeal Hampton challenges the district judge's denial of his motions to dismiss the § 924(c) charge and to suppress his confession. As to the § 924(c) charge, Hampton says only that he raises the issue to preserve his right to further appellate review in light of this court's decision in *United States v. Enoch*, 865 F.3d 575 (7th Cir. 2017), *cert. denied*, 583 U.S. __ (Feb. 22, 2018). That decision held that robbery of federal property under 18 U.S.C. § 2114(a) is a crime of violence for purposes of 18 U.S.C. § 924(c). Hampton does not ask us to overrule *Enoch*, and we will not do so here.

That leaves Hampton's argument that the district judge should have suppressed his confession because he invoked his right to counsel when he said "I haven't even gotten a chance to get a lawyer or anything." (He does not make an argument about his later statement: "Maybe I should have a lawyer.") Hampton says that his first statement clearly expressed that he did not want to continue his interview with law enforcement until he had a lawyer. Therefore, Hampton continues, his subsequent waiver of the right to counsel was involuntary. The government responds that the statement in question — that Hampton wanted to "change that" — revoked his permission to record the interview but did not express a present desire for counsel. At the very least, the government

contends, Hampton's statement was ambiguous, so the deputies had no obligation to stop questioning him.

Suspects subjected to custodial interrogation must be informed that they have the right to remain silent and to have an attorney present. *Miranda v. Arizona*, 384 U.S. 436, 471 (1966); *see also Edwards v. Arizona*, 451 U.S. 477, 485 (1981). If the suspect invokes his right to counsel, the interrogation must cease. *Miranda*, 384 U.S. at 474. But to invoke the right to counsel, the suspect must make a clear and unambiguous statement. *United States v. Shabaz*, 579 F.3d 815, 818 (7th Cir. 2009); *see also Davis v. United States*, 512 U.S. 452, 459 (1994) (a suspect must "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer … would understand the statement to be a request for an attorney"). In determining whether a suspect clearly invoked the right to counsel, this court considers the statement itself and the surrounding context. *United States v. Wysinger*, 683 F.3d 784, 793–94 (7th Cir. 2012).

Hampton's statement did not clearly show a present desire to consult with counsel. We have found such intent only when the suspect uses specific language. *See*, *e.g.*, *Wysinger*, 683 F.3d at 795–96 ("I mean, can I call [a lawyer] now?"). In *Lord v. Duckworth*, we hypothesized several statements that would be clear invocations of counsel. 29 F.3d 1216, 1221 (7th Cir. 1994). All of them request an action (or permission to act); they are more than observations. *See id*. ("Can I talk to a lawyer?" and "I have to get me a good lawyer, man. Can I make a phone call?") The statement Hampton points to is, by contrast, neither specific nor action-oriented. He merely observed that he had not gotten a lawyer. *See United States v. Lee*, 413 F.3d 622,

626 (7th Cir. 2005) (explaining that "potential desire to consult with legal counsel" is not invocation of right to counsel).

Apart from his words, the circumstances under which Hampton made his statement also support the view that he did not invoke his right to counsel. In the same breath as his request to stop recording, Hampton observed that he had not gotten a lawyer. A reasonable officer could have concluded that in making his statement, Hampton was explaining why he did not want to have the interview recorded. Hampton argues that by this statement he intended to invoke his right to counsel and rescind his permission to record the interview, but that there is more than one interpretation only reinforces the conclusion that his statement was ambiguous.

If Hampton had clearly invoked his right to counsel, we then would consider whether or not he voluntarily waived his rights when he later agreed to be interviewed without counsel. A suspect can waive the right to counsel after clearly invoking it by initiating "further communication, exchanges, or conversations with the police." *Edwards*, 451 U.S. at 484–85. By contrast, responding to more police-initiated questioning is not a voluntary waiver. *Id.* at 484.

Hampton argues that his waiver of the right to counsel was involuntary because he did not initiate the conversation with police that resulted in his agreement to proceed with the interview. But because Hampton's observation about not having talked with a lawyer was ambiguous, it does not matter who initiated the conversation; the deputies could continue questioning him. *Shabaz*, 579 F.3d at 818. Here the deputies did not immediately resume questioning; they took extra precautions. They explained to Hampton his rights and tried to

clarify his intent, which the Supreme Court has identified as "good police practice." *Davis*, 512 U.S. at 459.

### III.    CONCLUSION

Because Hampton did not invoke his right to counsel and he voluntarily waived his rights, we AFFIRM the district court's judgment.