# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2011AP2916-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| |        Plaintiff-Appellant, |
| |    v. |
| | Andrew M. Edler, |
| |        Defendant-Respondent. |

ON CERTIFICATION FROM THE COURT OF APPEALS

| | |
|---|---|
| OPINION FILED: | July 12, 2013 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | April 10, 2013 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Sheboygan |
|   JUDGE: | Terence T. Bourke |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | ABRAHAMSON, C.J., concurs. (Opinion filed.) |
|   CONCURRED/DISSENTED: | ZIEGLER, J., concurs and dissents. (Opinion filed.) |
|   NOT PARTICIPATING: | GABLEMAN, J., did not participate. |

ATTORNEYS:

    For the plaintiff-appellant, the cause was argued by *David H. Perlman*, assistant attorney general, with whom on the briefs was *J.B. Van Hollen*, attorney general.

    For the defendant-respondent, there was a brief by *Richard Hahn*, *Christopher M. Eippert*, and *Holden & Hahn, S.C.*, Sheboygan, and oral argument by *Christopher M. Eippert*.

**2013 WI 73**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. **2011AP2916-CR**
(L.C. No. **2011CF205**)

STATE OF WISCONSIN      **:**      IN SUPREME COURT

**State of Wisconsin,**

        **Plaintiff-Appellant,**

  **v.**

**Andrew M. Edler,**

        **Defendant-Respondent.**

**FILED**

**JUL 12, 2013**

Diane M. Fremgen
Clerk of Supreme Court

APPEAL from an order of the Circuit Court for Sheboygan County, Terence T. Bourke, Judge. *Affirmed and cause remanded.*

¶1 N. PATRICK CROOKS, J. This is a review of the circuit court's order granting Andrew M. Edler's motion to suppress statements he made during a custodial interrogation. We affirm the order of the circuit court. The statements Edler made after he invoked his right to counsel on April 20, 2011, must be suppressed. We remand to the circuit court for further proceedings consistent with this decision.

¶2     The court of appeals for District II certified the appeal pursuant to Wis. Stat. § (Rule) 809.61,[1] and we accepted the certification.[2]

¶3     To answer the certified questions, we must decide whether statements made by Edler on April 20 must be suppressed. This case requires an examination of two separate interactions between Edler and police, one involving Edler's unequivocal, unambiguous request for counsel while in custody on March 30, and the other involving Edler's arrest and statement, "Can my

_____

[1] All references to the Wisconsin Statutes are to the 2009-10 version.

[2] The certified questions are as follows:

1. [W]hether Wisconsin should follow Shatzer or rely on the Wisconsin Constitution [art. I, § 8] as the Wisconsin Supreme Court has done with Fifth Amendment issues on other occasions.

2. When the defendant asked, in the squad car on the way to the second interrogation, "can my attorney be present for this?" did he unambiguously invoke his right to counsel?

3. If the statement is declared to be ambiguous, then we ask that the supreme court resolve a third issue. Does it make a difference whether the ambiguous statement was made before Miranda warnings were given as opposed to afterwards?

We answer the first two questions. Because we hold that the statement by Edler was an unequivocal, unambiguous request for counsel, we need not and do not address whether the standard for a statement pre-Miranda is the same as that articulated in State v. Jennings, 2002 WI 44, 252 Wis. 2d 228, 647 N.W.2d 142, and Davis v. United States, 512 U.S. 452 (1994), or whether the standard should differ when a defendant has not recently been told of his or her constitutional rights.

2

attorney be present for this," on April 20.  Accordingly, there are two potential bases for suppressing the April 20 statements.

¶4  We first examine Edler's March 30 invocation in light of the recent United States Supreme Court case Maryland v. Shatzer, 559 U.S. 98 (2010).  In Shatzer the United States Supreme Court examined the presumption in Edwards v. Arizona, 451 U.S. 477 (1981), that after a suspect validly invokes the right to counsel, any subsequent waiver is invalid unless an attorney is present or the suspect "initiates further communication, exchanges, or conversations with the police." Edwards, 451 U.S. at 484-85.  The Court in Shatzer explained that the Edwards presumption ends when the suspect has been outside police custody for 14 days.  Shatzer, 559 U.S. at 110. Edler asks this court not to adopt Shatzer and instead interpret the Wisconsin Constitution to require a permanent bar on subsequent interrogation, or in the alternative, adopt a different test.  We see no need in this case to interpret the Wisconsin Constitution to provide different protection than that provided by the United States Supreme Court's interpretation of the United States Constitution.  We therefore adopt the rule created in Shatzer and, because 19 days had passed between when Edler was released from custody and when he was reinterrogated, hold that the March 30 invocation does not bar the interrogation on April 20.

¶5  A separate basis for suppressing the statements may exist even if the Edwards presumption no longer applied.  If Edler's statement in the police car on April 20 was an

3

unequivocal, unambiguous invocation of the right to counsel, the Edwards presumption would begin again.  Given the circumstances surrounding the invocation and the understanding that statements beginning with the word "can" often constitute a request, we hold that Edler's statement, "can my attorney be present for this," was a valid invocation of the right to counsel.  The invocation re-starts the Edwards presumption, barring Edler's waiver of rights later that day because Edler was not provided with counsel and did not "initiate[] further communication, exchanges, or conversations with the police."  After Edler's request for an attorney, police should have ceased questioning him.  Because they did not, Edler's statements made after that request must be suppressed.  His request was an unequivocal, unambiguous invocation of his right to counsel.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

¶6    Edler was a seventeen-year-old firefighter for the Waldo Fire Department.  He was able to respond to fires, but because he was on probationary status, he was limited to providing assistance such as moving hoses or other items for the firefighters.  He became a suspect in two arsons committed in a nearby town due to his unusually quick response to those fires.

¶7    On March 30, 2011, Detective Gerald Urban met with Edler about an unrelated burglary.  In an interrogation room at the sheriff's department, Urban read Edler his Miranda[3] rights, and Urban questioned Edler about the burglary.  After Edler made

---

[3]    Miranda v. Arizona, 384 U.S. 436 (1966).

4

incriminating statements about the burglary, Urban left the room, returning about eight minutes later. At that point, Urban began to ask Edler about the two arsons. Edler then unequivocally, unambiguously requested counsel, stating: "From this point on, I'd like a lawyer here." Urban ceased questioning Edler. After Urban spent about two minutes explaining that if Edler was responsible for the fires he should stop that behavior, Edler was taken to the jail to await charging on the burglary.

¶8 From jail the next day, Edler requested to speak with Urban. Edler was transported from the jail to the sheriff's department, where an interview room had been set up. Urban met with Edler in the interview room, and Edler asked him about when he would be having his initial appearance. Urban asked Edler if he had anything to say about the arsons, to which Edler responded, "I honestly don't have anything to say about that." Urban did not ask any further questions about the arsons at that time.

¶9 Edler was charged with one count of burglary and one count of misdemeanor theft, made his initial appearance, and was released from custody on April 1, 2011. Edler was appointed a public defender for the burglary case on April 4, 2011.

¶10 On April 18, 2011, Urban talked with a friend of Edler. Edler's friend agreed to wear a covert wire to talk to Edler about his involvement in the two arsons. Edler made some damaging statements that were recorded on that day.

5

¶11 On April 20, 2011, Urban arrested Edler at Edler's home for the arson fires. Edler's father inquired about why Edler was being arrested, and Urban explained to Edler's father that he was being arrested for the fires. Edler's father then told Edler to be honest and cooperate with the detectives.

¶12 Edler was handcuffed and placed in the back seat of the detective's unmarked car. Urban sat next to Edler in the back seat. As they rode in the car, Urban encouraged Edler to follow his father's advice and cooperate with the investigation. About five minutes into the drive, Edler stated, "Can my attorney be present for this," to which Urban responded, "Yes, he can." Edler did not make any incriminating statements during the ride.

¶13 When they arrived at the station, Edler was brought into an interrogation room.[4] Edler was having difficulty breathing and was crying when Urban entered the room. Urban explained the evidence they had against him and that Edler needed to come clean. Once again, he encouraged Edler to follow his father's advice. Then Urban stated, "I've got to play by the rules." He then gave Edler his Miranda warnings, and Edler waived those rights. Subsequently, Edler made incriminating statements to Urban.[5]

---

[4] The interview was video-recorded.

[5] Toward the end of the interview, Edler appeared to have a panic attack and then vomited. Urban did not question Edler after that occurred.

¶14 Edler was charged on April 22, 2011, with two counts of arson in violation of Wis. Stat. § 943.02(1)(a) and one count of possessing, manufacturing, or selling a Molotov cocktail in violation of Wis. Stat. § 943.06(2), each as a party to the crime under Wis. Stat. § 939.05.

¶15 Edler moved to suppress the statements he made after he waived his right to counsel on April 20 on the grounds that his Fifth and Sixth Amendment rights were violated.[6]

¶16 The Sheboygan County Circuit Court, the Honorable Terence T. Bourke presiding, granted the motion to suppress on the grounds that when in custody on April 20, Edler unequivocally, unambiguously invoked his right to counsel during the transportation to the sheriff's department, finding several facts: in the car on the way to the station Edler asked if his attorney could be present; Edler had an attorney in his burglary case but did not have one in the arson matters; and Edler had talked to Urban three weeks earlier and, at that time, Edler requested an attorney while being questioned about the arsons.

¶17 The circuit court held that Edler's Fifth Amendment right to counsel was violated when Urban interrogated Edler

---

[6] Edler also moved to suppress the April 18, 2011, statements recorded on the covert wire on Sixth Amendment grounds. The circuit court denied the motion to suppress the statements on April 18, dismissing the use of the Sixth Amendment in this case, stating that "Sixth Amendment rights do not attach until the State commences adversary proceedings," citing McNeil v. Wisconsin, 501 U.S. 171 (1991). The circuit court explained why the exceptions to this rule were not satisfied here. Edler did not appeal that order.

7

after Edler's unequivocal, unambiguous assertion of the right to counsel on April 20. The circuit court reasoned that under Miranda, after a request for counsel is made, it must be "scrupulously honored," and Edler's subsequent waiver of his Miranda rights at the station was therefore not valid. The circuit court quoted the holding in Edwards:

> We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

Edwards, 451 U.S. at 484-85.

¶18 The State appealed the order to suppress Edler's statements on the grounds that Edler's statement was a question about his rights and not itself an assertion of the rights. The court of appeals certified the appeal pursuant to Wis. Stat. § (Rule) 809.61.

## II. STANDARD OF REVIEW

¶19 Whether this court will apply the rule in Shatzer or adopt a different rule under the Wisconsin Constitution is a question of law which we decide independently. Kenosha County Dep't of Human Servs. v. Jodie W., 2006 WI 93, ¶19, 293 Wis. 2d 530, 716 N.W.2d 845.

¶20 Whether a defendant effectively invoked his Fifth Amendment right to counsel is a question of constitutional fact decided by this court in a two-part test. State v. Hambly, 2008 WI 10, ¶16, 307 Wis. 2d 98, 745 N.W.2d 48. First, this court

8

upholds the circuit court's findings of facts unless clearly erroneous. Id. Second, this court independently applies constitutional principles to those facts, benefitting from the circuit court's interpretation. Id. The relevant facts are not in dispute; therefore, we must answer the question of whether the statements should be suppressed under either the United States or Wisconsin constitutions. State v. Knapp, 2005 WI 127, ¶20, 285 Wis. 2d 86, 700 N.W.2d 899.

### III. ANALYSIS

¶21 We first decide whether this court will adopt the 14-day break-in-custody rule of Shatzer. If we adopt that rule and find that it was complied with here, then we must decide whether the statement by Edler in the back of the police car after he had been arrested was unequivocal or unambiguous.

¶22 The Fifth Amendment to the United States Constitution states in relevant part: "No person . . . shall be compelled in any criminal case to be a witness against himself." The Wisconsin Constitution contains a similar provision: "No person . . . may be compelled in any criminal case to be a witness against himself or herself." Wis. Const. art. I, § 8(1).

¶23 The United States Supreme Court has interpreted and applied the Fifth Amendment protections as requiring a warning of certain constitutional rights when a defendant is subjected to custodial interrogation. Miranda created a rule to prevent law enforcement officers from violating the Fifth Amendment. While the rule has been and is still often called

9

"prophylactic,"[7] the United States Supreme Court, Chief Justice Rehnquist writing for the majority, confirmed that it is a "constitutional rule" in Dickerson v. United States, 530 U.S. 428, 444 (2000). The rule requires that a suspect be apprised of certain constitutional rights, including the right to counsel, before custodial interrogation. Miranda v. Arizona, 384 U.S. 436, 444-45 (1966). If the suspect is not given these warnings and makes incriminating statements, those incriminating statements must be suppressed. Id. at 444. If the suspect chooses to invoke his or her right to counsel, that request must be "scrupulously honored," and "the interrogation must cease until an attorney is present." Id. at 474, 479.

¶24 The United States Supreme Court in Edwards further interpreted Miranda. The relevant facts from Edwards are as follows: Edwards was arrested, was given Miranda warnings, and was cooperating with police. 451 U.S. at 478-79. After some time passed, Edwards stated, "I want an attorney before making a deal." Id. at 479. The police did not question Edwards further on that day. Id. The next day, two different officers went to

---

[7] See, e.g., Michigan v. Harvey, 494 U.S. 344, 351 (1990) (a Sixth Amendment case describing prophylactic rules as "measures designed to ensure that constitutional rights are protected.")

Recently the majority in Shatzer emphasized that Edwards and Miranda were judicially prescribed prophylactic rules and that the Court had an obligation to justify any expansion. Maryland v. Shatzer, 559 U.S. 98, 103-05 (2010). The concurrence by Justice Stevens made it clear that the Shatzer rule was based on the Fifth Amendment and argued that the majority "demeans Edwards as a 'second layer' of 'judicially prescribed prophylaxis.'" Id. at 120 (Stevens, J., concurring).

10

see Edwards in jail. Id. Edwards attempted to decline to talk to them but was told by a guard "that 'he had' to talk." Id. The guard brought Edwards to the officers, the officers then informed him of his Miranda rights, and he waived them. Id. The Supreme Court held that "an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." Id. at 484-85. Thus, Edwards created a presumption of involuntariness of a waiver of Miranda rights made after a valid invocation of the right to counsel unless an attorney is provided or the defendant initiates further communication with police.

¶25 As we noted earlier, the United States Supreme Court recently interpreted the Edwards presumption in Shatzer and determined that the presumption of Edwards ends after a 14-day break in custody. The Shatzer court examined whether a break in custody ended the Edwards presumption. Shatzer, 559 U.S. at 100. Shatzer was incarcerated at a correctional facility serving a sentence on another offense. Id. at 100-01. A detective met with Shatzer at the institution, gave Shatzer his Miranda warnings, and Shatzer waived those rights. Id. at 101. There was some confusion about what the detective was there for, but when Shatzer realized what the detective wanted to talk about, Shatzer declined to speak without an attorney, and

11

Shatzer was released back into general population at the prison.[8] Id. Two years and six months later, a different detective went to the correctional institution to which Shatzer had been transferred. Id. The detective gave Shatzer his Miranda warnings, and Shatzer provided a written waiver of those rights. Id. Shatzer subsequently made incriminating statements during the interview and also agreed to a polygraph examination. Id. at 101-02. Five days later, Shatzer again waived his Miranda rights, was given a polygraph examination which he failed, and made additional incriminating statements. Id. at 102. Shatzer then moved to suppress his statements as a violation of the Fifth Amendment on the grounds that Edwards barred the use of his statements because he had invoked his right to counsel two and a half years earlier. Id.

¶26 The Supreme Court disagreed with Shatzer and held that the Fifth Amendment was not violated. The Court described the reasons behind Edwards as "conserving judicial resources," "preserv[ing] the integrity of an accused's choice to communicate with police only through counsel," and "preventing police from badgering a defendant into waiving his previously asserted Miranda rights." Id. at 106 (citations omitted). Explaining the problems with a permanent bar to future

---

[8] The United States Supreme Court in Shatzer held that being released back into general population constituted a break in Miranda custody, stating: "Without minimizing the harsh realities of incarceration, we think lawful imprisonment imposed upon conviction of a crime does not create the coercive pressures identified in Miranda." Shatzer, 559 U.S. at 113.

questioning and the establishment of prophylactic rules,[9] the court decided that the Edwards presumption ends after there is a 14-day break in custody.  Id. at 110.  It reasoned, "[t]hat provides plenty of time for the suspect to get reacclimated to his normal life, to consult with friends and counsel, and to shake off any residual coercive effects of his prior custody."  Id.  The court recognized the clarity and certainty that result from Edwards and stated that "[c]onfessions obtained after a 2-week break in custody and a waiver of Miranda rights are most unlikely to be compelled, and hence are unreasonably excluded."  Id. at 111.

### A.

¶27 The State argues that we should adopt the rule of Shatzer because it strikes a reasonable balance between the competing interests, preserving the protections of Edwards, and providing predictability for police officers.  Edler argues that Edwards would normally bar further interrogation of a defendant after he had invoked his right to counsel and that the subsequent interrogation of Edler was in violation of Edwards.

---

[9] The Edwards majority does not describe the holding as creating a prophylactic rule.  It holds that a constitutional violation occurred, stating, "Because the use of [Edwards'] confession against him at his trial violated his rights under the Fifth and Fourteenth Amendments as construed in Miranda v. Arizona, we reverse the judgment of the Arizona Supreme Court."  Edwards v. Arizona, 451 U.S. 477, 480 (1981) (emphasis added) (internal citation omitted).  The Edwards rule has been subsequently characterized as a prophylactic rule.  See Shatzer, 559 U.S. at 105 (citing Montejo v. Louisiana, 556 U.S. 778, 787 (2009); Michigan v. Harvey, 494 U.S. 344, 349 (1990); Solem v. Stumes, 465 U.S. 638, 644, n.4 (1984)).

13

He further argues that the Shatzer rule constricts the rights of defendants who have invoked their right to counsel. Edler urges this court to extend the protection provided in Wisconsin under Article 1, Section 8 of the Wisconsin Constitution beyond that provided by the United States Supreme Court in Shatzer. He suggests that subsequent custodial interrogation be permitted only if the suspect's attorney is present or if the suspect initiates further communication. In the alternative, he suggests a totality of the circumstances test to determine whether a break in custody is sufficient.

¶28 We adopt the 14-day rule of Shatzer. The break in custody was more than 14 days, and therefore, we hold that interrogating Edler after a 19-day break in custody did not itself violate Edwards. We agree with the court in Shatzer that predictability is important when creating prophylactic rules so police have clear guidance on what they can do and when.[10] See Shatzer, 559 U.S. at 110. We also agree that setting the two-week rule spares courts the inquiry of whether a suspect being asked to waive Miranda rights has ever asserted a Miranda right to counsel at an earlier date. Id. at 111-12.

---

[10] We recognize that the Shatzer majority calls the rule "prophylactic," implying that it is not mandated by the United States Constitution. In this case, Edler argues that this court should interpret the Wisconsin Constitution to prevent this type of behavior by police. Similarly, the court of appeals certified to us the question of whether to extend the Wisconsin Constitution to provide different protection than that in Shatzer. For these reasons, we discuss the scope of the Wisconsin Constitution.

¶29 This holding is consistent with the fact that we often interpret both the United States and Wisconsin constitutions the same way. See, e.g., State v. Jennings, 2002 WI 44, 252 Wis. 2d 228, 647 N.W.2d 142. There are exceptions to this rule. For example, in Knapp, this court looked to the Wisconsin Constitution to provide protection beyond that described by the United States Supreme Court. 285 Wis. 2d 86. In Knapp, a police officer testified that he had intentionally failed to provide Miranda warnings to a suspect so as to "keep the lines of communication open." Id., ¶¶13-14. The police officer acknowledged that he was aware that the suspect was attempting to contact counsel before the police brought the suspect in for custodial interrogation. Id., ¶14. Additionally, "the State ha[d] conceded that the physical evidence was seized as a direct result of an intentional Miranda violation." Id., ¶20. This court held that "the exclusionary rule bars physical fruits obtained from a deliberate Miranda violation under Article I, Section 8." Id., ¶73 (footnote omitted).

¶30 The case at hand does not present the same kind of constitutional issues as the intentional violation of Miranda in Knapp. We decline to extend the meaning of Wisconsin Constitution Article I, Section 8 in this situation so as to provide different protection than the Fifth Amendment to the United States Constitution.

¶31 Because we decline to provide different protection, we apply the 14-day break-in-custody rule of Shatzer. The parties agree that Edler was outside of custody for 19 days. Therefore,

15

_Shatzer_ was complied with here, and the statements cannot be suppressed on the grounds that Edler's March 30 invocation barred the interrogation on April 20.

B.

¶32 Even if under _Shatzer_ enough time passed since Edler invoked his _Miranda_ right to counsel such that his subsequent interrogation did not violate the _Edwards_ presumption, we must determine whether Edler's statement in the police car was an unequivocal, unambiguous invocation of the right to counsel such that the subsequent waiver at the station was invalid under _Edwards_.[11]

¶33 As noted above, _Edwards_ creates a presumption that unless a suspect either "initiates further communication, exchanges, or conversations," or is provided with an attorney, any waiver made after a valid invocation of the right to counsel is invalid. _Edwards_, 451 U.S. at 484-85. "The legal sufficiency of a defendant's invocation of the right to counsel

---

[11] Generally, a defendant must be subjected to custodial interrogation in order to get the protections of _Miranda_ and _Edwards_. _See_ State v. Lonkoski, 2013 WI 30, ¶41, 346 Wis. 2d 523, 828 N.W.2d 552. In State v. Hambly, 2008 WI 10, ¶3, 307 Wis. 2d 98, 745 N.W.2d 48, we held that a suspect who had been arrested and was not yet being interrogated could invoke his _Miranda_ right to counsel. In that case, this court split on the issue of whether interrogation must be "imminent or impending," with three justices deciding that it must be "imminent or impending" and three justices concluding that the question need not be answered. _Id._, ¶33. We need not answer that question here because the State conceded that Edler had a right to invoke his _Miranda_ rights during the police transport when the attempted interrogation was forthcoming.

16

during a custodial interrogation is determined by the application of a constitutional standard to historical facts." Jennings, 252 Wis. 2d 228, ¶25. This court measures independently "the historical facts against a uniform constitutional standard, benefiting from, but not deferring to, the circuit court's decision." Id. (citations omitted).

¶34 In Davis v. United States, 512 U.S. 452 (1994), the United States Supreme Court established the test of whether a statement invoked the right to counsel as follows: "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning." Id. at 459. The test adopted was an objective one: "Although a suspect need not 'speak with the discrimination of an Oxford don,' he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Id. (internal citation omitted). This court adopted the United States Supreme Court's test in Jennings, 252 Wis. 2d 228, ¶¶30, 36. Under the objective test, we must examine the circumstances surrounding the request.[12]

---

[12] We note that by using the objective test of Davis and Jennings to determine whether the statement was an unambiguous, unequivocal invocation of the right to counsel, we are not answering the third question certified by the court of appeals. Recall our earlier explanation:

¶35 The relevant circumstances support the holding that Elder's statement was an unequivocal, unambiguous request for counsel.  Urban had interrogated Edler on March 30, at which time Edler had requested an attorney on the arsons, stating, "From this point on, I'd like a lawyer here," and the request had been complied with.  Urban had been present on March 31 and tried to ask Edler about the arsons, to which Edler responded, "I honestly don't have anything to say about that."  Urban had talked to Edler's father, and Edler's father had encouraged Edler to be honest with the detectives.  At the time Edler invoked his right to counsel he had been arrested, and no one disputes that the word "this" related to the forthcoming interrogation.  Urban knew Edler had been charged with burglary and had an attorney on that charge.  An officer in Urban's position would have known that Edler had on previous occasions requested counsel to deal with this matter, which would make the officer more likely to understand that Edler was asking for his attorney again.  In light of the circumstances, Edler's statement, "can my attorney be present for this," was

---

Because we hold that the statement by Edler was an unequivocal, unambiguous request for counsel, we need not and do not address whether the standard for a statement pre-Miranda is the same as that articulated in State v. Jennings, 2002 WI 44, 252 Wis. 2d 228, 647 N.W.2d 142 and Davis v. United States, 512 U.S. 452 (1994), or if the standard should differ when a defendant has not recently been told of his or her constitutional rights.

Supra, ¶2 n.2.

18

sufficiently clear to a reasonable officer in Urban's position to understand the statement to be a request for an attorney.

¶36 Regardless of the surrounding circumstances, including Edler's previous experience with Detective Urban, we are satisfied that Edler's statement, "can my attorney be present for this," constituted an unambiguous, unequivocal invocation. Our holding is consistent with the approaches of other courts that have looked at similar statements. See, e.g., United States v. Lee, 413 F.3d 622 (7th Cir. 2005) (holding "can I have a lawyer" was a valid invocation and that police should have ended the interrogation unless they clarified the suspect's statement); United States v. Wysinger, 683 F.3d 784 (7th Cir. 2012) (citing its decision in Lee and reiterating that the phrase "can I have a lawyer" is an unequivocal, unambiguous request for counsel); State v. Dumas, 750 A.2d 420 (R.I. 2000) (holding that the phrase "can I get a lawyer" amounted to a colloquial request); Taylor v. State, 553 S.E.2d 598 (Ga. 2001) (holding that the phrase "can I have a lawyer present when I do that," when made in response to the police's request that a suspect tell her side of the story, was an unequivocal, unambiguous request for an attorney); Commonwealth v. Hilliard, 613 S.E.2d 579 (Va. 2005) (holding that "can I get a lawyer in here? . . . I already have a lawyer," in the circumstances, was an unequivocal, unambiguous request for an attorney).

¶37 For the reasons stated above, we hold that Edler's statement was an unequivocal, unambiguous request for counsel. There is no indication that after Edler's unequivocal,

19

unambiguous request that Edler initiated further communications with Urban to indicate a valid waiver under Edwards. Therefore, any statements made by Edler after he requested his attorney in the car on the way to the sheriff's department must be suppressed.

## IV. CONCLUSION

¶38 We first examine Edler's March 30 invocation in light of the recent United States Supreme Court case Shatzer. In Shatzer the United States Supreme Court examined the presumption in Edwards, that after a suspect validly invokes the right to counsel, any subsequent waiver is invalid unless an attorney is present or the suspect "initiates further communication, exchanges, or conversations with the police." Edwards, 451 U.S. at 484-85. The Court in Shatzer explained that the Edwards presumption ends when the suspect has been outside police custody for 14 days. Shatzer, 559 U.S. at 110. Edler asks this court not to adopt Shatzer and instead interpret the Wisconsin Constitution to require a permanent bar on subsequent interrogation, or in the alternative, adopt a different test. We see no need in this case to interpret the Wisconsin Constitution to provide different protection than that provided by the United States Supreme Court's interpretation of the United States Constitution. We therefore adopt the rule created in Shatzer and, because 19 days had passed between when Edler was released from custody and when he was reinterrogated, the March 30 invocation does not bar the interrogation on April 20.

20

¶39  A separate basis for suppressing the statements may exist even if the Edwards presumption no longer applied.  If Edler's statement in the police car on April 20 was an unequivocal, unambiguous invocation of the right to counsel, the Edwards presumption would begin again.  Given the circumstances surrounding the invocation and the understanding that statements beginning with the word "can" often constitute a request, we hold that Edler's statement, "can my attorney be present for this," was a valid invocation of the right to counsel.  The invocation re-starts the Edwards presumption, barring Edler's waiver of rights later that day because Edler was not provided with counsel and did not "initiate[] further communication, exchanges, or conversations with the police."  After Edler's request for an attorney, police should have ceased questioning him.  Because they did not, Edler's statements made after that request must be suppressed.  His request was an unequivocal, unambiguous invocation of his right to counsel.

*By the Court.— Affirmed and cause remanded.*

¶40  MICHAEL J. GABLEMAN, J., did not participate.

21

¶41 SHIRLEY S. ABRAHAMSON, C.J. *(concurring).* I concur in the mandate. The defendant's statement is to be suppressed. I join the part of the majority opinion concluding that Edler's statement in the police car was an unequivocal, unambiguous invocation of his right to counsel such that the subsequent waiver at the station was invalid under Edwards.[1]

¶42 A person being interrogated in custody does not have to use the precise words "I want a lawyer" to invoke the right to counsel. In discussing whether a defendant's statement about counsel is an unequivocal request for counsel, the Texas Supreme Court wisely observed: "While police often carry printed cards to ensure precise Miranda warnings, the public is not required to carry similar cards so they can give similarly precise responses."[2] This court should follow this sage, practical advice.

¶43 I write separately because I do not agree with the majority opinion that the court should fully adopt the 14-day rule of Maryland v. Shatzer, 559 U.S. 98 (2010).

¶44 There is no need in the present case for the court to decide whether to adopt the Shatzer rule. The defendant's invocation of the right to counsel at the second interrogation decides the present case. The statements made after invocation of the right to counsel must be suppressed.

---

[1] Edwards v. Arizona, 451 U.S. 477 (1981).

[2] In re H.V., 252 S.W.3d 319, 326 (Tex. 1998) (footnote omitted).

1

¶45 If I were to reach the Shatzer issue, I would follow Shatzer to the extent of holding that law enforcement's subjecting a suspect——who has invoked his right to counsel and has been released from custody——to custodial interrogation within the Shatzer 14-day period violates Miranda[3] and Edwards unless the suspect reinitiates the conversation or a lawyer is made available.

¶46 Law enforcement obligations under state law for the first 14 days would thus be governed by and be in sync with the bright-line rule set under federal law.[4] I would adopt this 14-day prophylactic rule under the court's superintending and administrative authority, Wis. Const. Art. VII, § 3(1).[5]

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

[4] Nevertheless, I agree with Justice Thomas, who wrote in Shatzer that "an otherwise arbitrary rule is not justifiable merely because it gives clear instruction to law enforcement officers." Shatzer, 559 U.S. 98, 119 (2010) (Thomas, J., concurring).

[5] See, e.g., In re Jerrell C.J., 2005 WI 105, ¶¶40-41, 283 Wis. 2d 145, 699 N.W.2d 110 (relying on Art. VII, § 3(1)).

Citing numerous law review articles, Professor LaFave discusses the criticism of the United States Supreme Court's reliance on prophylactic rules rather than administratively based rules as follows:

In general, commentators have criticized the Court's explanation of its utilization of prophylactic rules (often even though agreeing with the rules themselves). The commentators cite the Court's failure to fully explain its authority to prescribe such rules, the Court's failure to fully explain the difference (if any) between prophylactic and administratively based per se rules, the Court's failure to provide clear guidelines as to when the

¶47 I would not adopt Shatzer's prophylactic rule that after the 14-day period Edwards has no effect.[6] Under Edwards, once a suspect invokes the right to counsel during custodial interrogation, a subsequent waiver of that right "cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights."[7]

¶48 The Shatzer decision and today's majority opinion are based entirely on an unsupported generalization about all suspects, namely that a 14-day break in custody and interrogation will somehow overcome the concern of coercion and compulsion that is the basis for the Edwards line of cases. The Shatzer Court speculated that "[i]t seems to us that" a period of "14 days . . . provides plenty of time for the suspect to get

imposition of a prophylactic rule is justified, the Court's inconsistency in its use of the "prophylactic" characterization in describing what appear to be functionally similar standards, and the Court's failure to establish any significant guidelines for determining when safeguards provided by legislation are sufficient to replace the prophylactic standards.

1 Wayne R. LaFave, Crim. Proc. § 2.9(h) (3d ed. 2007 & Supp. 2012).

[6] The Shatzer court explained that after a 14-day break in custody, Edwards is no longer in effect but a defendant is "free to claim the prophylactic protection of Miranda——arguing that his waiver of Miranda rights was in fact involuntary under Johnson v. Zerbst." Shatzer, 559 U.S. at 110-11 n.7 (internal citations omitted).

[7] Edwards, 451 U.S. at 484. This court has stated that such a waiver is presumed to be invalid. State v. Harris, 199 Wis. 2d 227, 251-52, 544 N.W.2d 545 (1996).

reacclimated to his normal life, to consult with friends and counsel, and to shake off any residual coercive effects of his prior custody."[8]

¶49 I agree with Justice John Paul Stevens that this speculation "may well prove inaccurate in many circumstances."[9] Fourteen days is an arbitrary figure.[10]

---

[8] <u>Shatzer</u>, 559 U.S. at 110 (2010).

[9] <u>Id.</u> at 123-24 n.7 (Stevens, J., concurring).

In <u>Arizona v. Roberson</u>, the United States Supreme Court explained as follows: "[T]o a suspect who has indicated his inability to cope with the pressures of custodial interrogation by requesting counsel, any further interrogation without counsel having been provided will surely exacerbate whatever compulsion to speak the suspect may be feeling." <u>Arizona v. Roberson</u>, 486 U.S. 675, 686 (1988).

[10] The <u>Shatzer</u> court admitted that "while it is certainly unusual for this Court to set forth precise time limits governing police action, it is not unheard-of." <u>Shatzer</u>, 559 U.S. 98, 110 (2010). Ironically, the only case the <u>Shatzer</u> court cites for its "unusual" decision to set forth a time limit held that police <u>must</u> bring forth a person arrested without a warrant to a magistrate judge within 48 hours to establish probable cause for continued detention. <u>Shatzer</u>, 559 U.S. 98, 110 (2010) (citing <u>County of Riverside v. McLaughlin</u>, 500 U.S. 44 (1991)). The <u>McLaughlin</u> Court recognized a presumption that up to a 48-hour delay in holding the probable cause hearing after arrest was reasonable and hence constitutionally permissible.

In <u>McLaughlin</u>, the Court required law enforcement <u>to do</u> something within a short specified period of time in order to protect the rights of the accused, while in <u>Shatzer</u>, the Court concluded that if <u>law enforcement refrains</u> from doing something for a sufficient period of time, the accused's rights have been sufficiently respected.

When police have not honored an earlier commitment to provide a detainee with a lawyer, the detainee likely will "understan[d] his (expressed) wishes to have been ignored" and "may well see future objection as futile and confession (true or not) as the only way to end his interrogation." . . . Simply giving a "fresh set of Miranda warnings" will not "'reassure' a suspect who has been denied the counsel he has clearly requested that his rights have remained untrammeled.'"[11]

¶50 As Justice Stevens wrote, Edwards may require a longer period than 14 days, under the circumstances of a case, for a court to conclude that a sufficient break in custody occurred to dissipate the lingering coercive effects of the prior interrogation.[12]

---

Still, in McLaughlin, the Court held that even if law enforcement complied with the 48-hour mandate, the accused may still prove a Constitutional violation. McLaughlin, 500 U.S. at 56-57 (1991).

See Zadvydas v. Davis, 533 U.S. 678, 701, 712 (2001) (citing McLaughlin, 500 U.S. at 56-58) (noting that the 48-hour rule was based on the court of appeals' determination of the time required to complete a probable cause hearing). In contrast, the 14-day period selected in Shatzer bears no relationship to the needs of law enforcement, the characteristics of the suspect, or the circumstances that occur during the 14 days.

See also Jessica A. Davis, Casenote, Another Tweak to Miranda: The Supreme Court Significantly Limits the Edwards Presumption of Involuntariness in Custodial Interrogation, 36 S. Ill. U. L.J. 593, 608 (2012) ("According to the majority, fourteen days is sufficient for the coercive pressures to custodial interrogation to disappear because it says so.").

[11] Shatzer, 559 U.S. 98, 121-22 (2010) (Stevens, J., concurring) (citations omitted) (quoting Davis v. United States, 512 U.S. 452, 472-73 (1994) (Souter, J., concurring in judgment); Roberson, 486 U.S. at 686).

[12] As Justice Stevens commented:

5

¶51 If a court is not willing to extend Edwards indefinitely and the court concludes that the coercive effects of the prior interrogation may dissipate with time, then the court should determine whether the coercive effects have dissipated in that particular case. A court should take an

---

> The most troubling aspect of the Court's time-based rule is that it disregards the compulsion caused by a second (or third, or fourth) interrogation of an indigent suspect who was told that if he requests a lawyer, one will be provided for him. When police tell an indigent suspect that he has the right to an attorney, that he is not required to speak without an attorney present, and that an attorney will be provided to him at no cost before questioning, the police have made a significant promise. If they cease questioning and then reinterrogate the suspect 14 days later without providing him with a lawyer, the suspect is likely to feel that the police lied to him and that he really does not have any right to a lawyer.

Shatzer, 559 U.S. 98, 121 (2010) (Stevens, J., concurring).

See Kit Kinports, The Supreme Court's Love-Hate Relationship with Miranda, 101 J. Crim. L. & Criminology 375, 386 (2011) ("[O]nce a suspect is released from custody, she is not entitled to state-provided counsel (assuming charges have not yet been filed). For those unable to afford private lawyers, then, a fourteen-day break in custody does not provide a meaningful opportunity to obtain legal advice.") (footnote omitted).

See also Illan M. Romano, Note & Comment, Is Miranda on the Verge of Extinction? The Supreme Court Loosens Miranda's Grip in Favor of Law Enforcement, 35 Nova L. Rev. 525, 535 (2011) (presenting the following hypothetical application of Shatzer: "This holding expressly permits police to engage in a tactic where, once a suspect invokes his right to counsel, police simply release the suspect, wait fourteen days, and try again hoping this time the suspect is not intelligent enough to invoke his right to counsel, which may not have been provided to him the first time around.").

individualized approach to the dissipation of the coercive effects of the prior interrogation, not a generalized one. Under these circumstances, the court should hold that after the 14-day period ends, the presumption established by Edwards continues and the State has the burden of proving by clear and convincing evidence that time has dissipated the coercive effects of the prior interrogation in that case.

¶52 In these situations, the court should consider the totality of circumstances including the age, education, and intelligence of the suspect; the physical, psychological and emotional condition of the suspect; and the suspect's prior experience with police to determine whether the coercive effects of the prior interrogation have dissipated. The personal characteristics of the suspect must be viewed along with the police tactics used, such as the time between interrogations and length of the interrogations, the general conditions under which the statements were made, the physical and psychological pressures brought to bear on the suspect, the inducements and strategies used by law enforcement, the prior relationship between the interrogating officer and the suspect, and the circumstances ensuing in the period between the suspect's exercising the right to counsel and the re-interrogation.

¶53 Examining whether the coercive effects of the prior interrogation have dissipated comports with the genuine concern for individual voluntariness required by Miranda and Edwards, rather than a blanket generalization about human reaction to

7

subsequent or repeated interrogations, and assists law enforcement officers in governing their conduct.[13]

¶54 In the present case, after validly invoking his right to counsel with regard to the arson investigation, the 17-year-old defendant was released from custody. Then, 19 days later——after law enforcement had covertly placed a wire on the defendant's young friend——the same detective whom the defendant had previously refused to talk to showed up at his home to arrest him again to discuss the same investigation. As the defendant was led away to the squad car, his father told him to be honest and to cooperate with the detectives.

¶55 We know that at no time was the defendant provided an attorney as he requested during the custodial interrogation. The State has not suggested that the defendant "initiate[d] further communication, exchanges, or conversations with the police."[14]

¶56 Further inquiry is necessary about this particular defendant and the circumstances, beyond just saying that 14 days passed, before I can join an opinion concluding, as a matter of law, that the coercive effects of the prior interrogation had dissipated.

¶57 For the reasons set forth, I write separately.

---

[13] _See_ Hannah Misner, Comment, _Maryland v. Shatzer: Stamping a Fourteen-Day Expiration Date on Miranda Rights_, 88 Denv. U. L. Rev. 289, 305 (2010).

[14] _Edwards_, 451 U.S. at 485.

8

¶58 ANNETTE KINGSLAND ZIEGLER, J. *(concurring in part, dissenting in part).* I concur because I agree with the majority's adoption of Maryland v. Shatzer, 559 U.S. 98 (2010). See majority op., ¶31. I dissent and write separately to discuss the majority opinion's lack of regard for the fundamental question presented in this case: what is the legal standard to be applied when a suspect makes a statement about counsel post-custody, pre-Miranda warnings, pre-interrogation, and pre-waiver of Miranda rights. Miranda v. Arizona, 384 U.S. 436 (1966). In my view, we accepted certification to answer this question. Instead, the majority opinion merely restates the previously adopted Davis standard as if Edler's statement was made post-custody, post-Miranda warnings, during interrogation, and after waiver of Miranda rights. Davis v. United States, 512 U.S. 452, 459 (1994). It was not. We should answer the fundamental question presented and provide guidance for law enforcement, courts, and counsel, as this issue is likely to recur especially in light of Shatzer and its impact on Edwards v. Arizona, 451 U.S. 477 (1981).

¶59 Here, the issue presented is whether, under the circumstances, Edler's question "Can my attorney be present for this?" constitutes an invocation of the right to counsel. In response to this question, Detective Urban responded "Yes he can." About 20 minutes after making that statement, Edler was read his Miranda rights. While his rights were being read, Edler interrupted Urban and stated "If the lawyer—if I request a lawyer, does that mean you still have to bring me into custody

1

and I have to go sit in the jail?" Urban told Edler that he was already in custody and that Urban needed to read the full Miranda rights before they could talk further. Urban read Edler his Miranda rights in their entirety. Edler waived his right to counsel and made incriminating statements.

¶60 Approximately three weeks earlier, Edler was arrested, read his Miranda rights, and unambiguously invoked his right to counsel by stating "From this point on, I'd like to have a lawyer here." Urban scrupulously honored that request and ceased any questioning. Thus, Edler knew how to unambiguously invoke his right to counsel and knew that questioning would cease if he so requested counsel. Urban also knew that Edler was capable of invoking his right to counsel, and Urban demonstrated that he would scrupulously honor a request for counsel.

¶61 Simply stated, my dissent distils into the following four points, which are interrelated: (1) the majority's analysis has not adhered to the proper de novo standard of review; (2) the majority muddies the waters with respect to existing precedent, the "reset" for interrogation permitted by Shatzer, and the impact of Shatzer on Edwards; (3) the majority does not provide sufficient analysis regarding how or whether law enforcement may clarify such pre-Miranda questions from a suspect; and (4) this issue is ripe for determination so that law enforcement, litigants, and courts will know how to evaluate such statements.

I. FACTUAL BACKGROUND

2

¶62 The facts are undisputed. On March 30, 2011, Detective Urban met with Edler to discuss a burglary. Urban read Edler his <u>Miranda</u> rights and interrogated him, and Edler made incriminating statements about the burglary. After a short break, Urban asked Edler about two arsons that were unrelated to the burglary. At this point, Edler successfully invoked his right to counsel by stating "From this point on, I'd like a lawyer here." Urban respected Edler's invocation and ceased the interrogation. In fact, after Edler made this statement, he began to talk again and Urban told him "to be quiet" because he had asked for a lawyer. In other words, in the first interrogation, Urban scrupulously honored Edler's invocation of counsel.

¶63 Edler spent that night in jail and requested to meet with Urban the next day. After a brief conversation about the burglary charge, Urban asked Edler if he had anything to say about the arsons. Edler responded that "I honestly don't have anything to say about that." Urban again scrupulously honored Edler's wish to remain silent.

¶64 On April 1, 2011, Edler was charged with burglary, made his initial appearance with an attorney from the Public Defender's office, and was released from custody on a signature bond. On April 4, 2011, Edler was appointed a public defender on the burglary charge.

¶65 Almost three weeks later, on April 20, 2011, Edler was arrested for arson. As Edler was being arrested, his father urged him to be honest and cooperate with the police. Edler was

3

handcuffed, placed in the back of a squad car, and transported to the police station. Edler was not read his <u>Miranda</u> rights at this point. About five minutes into the 20 minute car ride to the station, Edler asked "Can my attorney be present for this?" Urban responded "Yes he can." Edler did not ask any follow up questions or make further statements about an attorney during the remaining car ride, and Urban did not ask Edler any questions about the burglary or the arsons during the car ride.

¶66 At the police station, Urban read Edler his <u>Miranda</u> rights. As Edler was read the portion of his <u>Miranda</u> rights regarding his right to counsel, Edler interrupted Urban and asked "If the lawyer—if I request a lawyer, does that mean you still have to bring me into custody and I have to go sit in the jail?" Urban responded that Edler was already in custody and that he would be willing to discuss the issue further after reading the rights. Urban then reread the <u>Miranda</u> warnings in its entirety to Edler. Edler waived his rights. Urban asked Edler "realizing that you have these rights, are you now willing to answer questions?" Edler replied "yeah." Edler then made incriminating statements to Urban.

## II. STANDARD OF REVIEW

¶67 I agree with the majority that the standard of review is two-fold. We uphold the trial court's findings of fact unless they are clearly erroneous, and we apply the constitutional principles to those facts independently while benefiting from the trial court's interpretation. <u>State v. Hambly</u>, 2008 WI 10, ¶16, 307 Wis. 2d 98, 745 N.W.2d 48. I

4

disagree with the majority's application of this standard of review.

¶68 The trial court did not engage in fact finding that required discretionary determinations regarding credibility, demeanor, or which version of the facts to accept. We accept the facts as the trial court found them. We then engage in a de novo review of the legal standard the trial court applied. Because this legal standard has never been determined, certainly no fault of the trial court, the trial court was without a specific legal standard to apply when it reached its legal conclusion. If the trial court applied the correct legal analysis, we should adopt that standard. If the trial court should have applied a different legal analysis, we should set forth that rule. The majority does neither.

¶69 While I do not quarrel with the majority's determination that a question such as "Can my lawyer be present for this?" could be an unambiguous request for counsel under certain circumstances, another court could come to the opposite conclusion just as easily in different circumstances. Law enforcement, courts, and litigants expect our opinions to give them the necessary tools to do their jobs properly. The majority opinion does not provide that guidance. Because the mere mention of an attorney is not an invocation of counsel, it is important to clarify what about Edler's question meets a standard applicable to pre-Miranda invocations. The majority specifically does not extend the Davis standard to this pre-

5

_Miranda_ scenario,[1] it does not clarify what legal standard should be applied, nor does it conclude that this statement is <u>always</u> an invocation of counsel. <u>See</u> majority op., ¶35. Hence, the applicable legal standard remains unanswered for statements regarding counsel when the suspect is in custody, has not been given the <u>Miranda</u> warnings, is not yet being interrogated, and has not waived his or her <u>Miranda</u> rights.[2] <u>See</u> majority op., ¶¶2 n.2, 34 n.12. We can do better.

III. PRECEDENT, <u>SHATZER</u>, AND OFFICER CONDUCT

A. Precedent

¶70 Precedent makes it less than clear that Edler's question "Can my attorney be present for this?" is sufficient to invoke his right to counsel. "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a

---

[1] <u>Davis</u> would be the rule to apply here when a suspect has been given <u>Miranda</u> rights, has waived them, and is being interrogated. <u>Davis v. United States</u>, 512 U.S. 452, 459 (1994); <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). Edler made no such statement regarding an attorney after he waived his <u>Miranda</u> rights.

[2] Though Wisconsin has not previously decided whether the <u>Davis</u> standard applies to statements made before <u>Miranda</u> warnings are given, other courts have faced this question. <u>See, e.g.</u>, <u>United States v. Rodriguez</u>, 518 F.3d 1072, 1079 n.6, 1080 (9th Cir. 2008) (listing 10 cases that have considered the standard applicable to pre-<u>Miranda</u> invocations and concluding that <u>Davis</u> did not supersede Ninth Circuit case law requiring clarification of ambiguous statements prior to obtaining a <u>Miranda</u> waiver); Harvey Gee, <u>An Ambiguous Request for Counsel Before, and Not After a Miranda Waiver: United States v. Rodriguez, United States v. Fry and State v. Blackburn</u>, 5 Crim. L. Brief 51 (2009) (discussing standards for pre-<u>Miranda</u> invocations).

6

reasonable officer in light of the circumstances would have understood only that the suspect <u>might</u> be invoking the right to counsel, our precedents do not require the cessation of questioning." <u>Davis</u>, 512 U.S. at 459. The majority does not conclude that the question "Can my attorney be present for this?" is always an invocation of counsel. <u>See</u> majority op., ¶35. In fact, courts often conclude that such a question regarding counsel is not an invocation, even if it is asked after the <u>Miranda</u> warnings were given.[3]

¶71 For example, in <u>State v. Ward</u>, we concluded that where the defendant asked the police whether she should call an attorney, that question was equivocal and insufficient to invoke her right to counsel. 2009 WI 60, ¶43, 318 Wis. 2d 301, 767 N.W.2d 236. <u>See also</u>, <u>Halbrook v. State</u>, 31 S.W.3d 301, 302-04 (Tex. Ct. App. 2000) (holding that the question "Do I get an opportunity to have my attorney present?" was ambiguous under <u>Davis</u>); <u>United States v. Doe</u>, 170 F.3d 1162, 1166 (9th Cir. 1999) (concluding that defendant's question "What time will I see a lawyer?" was ambiguous under <u>Davis</u>); <u>United States v.</u>

---

[3] A question, such as "Can I get a lawyer?" <u>may</u> be sufficiently clear to invoke the right to counsel in the right circumstances. The majority opinion should not be read to conclude that statements starting with "Can I" and including the word "lawyer" are all unambiguous and unequivocal requests for counsel. <u>See</u> majority op., ¶36. <u>See also</u> Marcy Strauss, <u>Understanding</u> Davis v. United States, 40 Loy. L.A. L. Rev. 1011, 1037 (2007) ("The question, 'Can I get a lawyer?' has received a more checkered reception. Many courts have found this type of question to be ambiguous, and a way of simply asking for clarification of one's rights."); Annual Review of Criminal Procedure, 40 Geo. L.J. Ann. Rev. Crim. Proc. 199-202 (2011).

*Younger*, 398 F.3d 1179, 1187 (9th Cir. 2005) (concluding that defendant did not sufficiently invoke his right to counsel when he asked "[b]ut, excuse me, if I am right, I can have a lawyer present through all this, right?") abrogated in part on other grounds, United States v. Vongxay, 594 F.3d 1111, 1116 (9th Cir. 2010); Commonwealth v. Redmond, 568 S.E.2d 695, 700 (Va. 2002) (holding that "Can I speak to my lawyer? I can't even talk to [a] lawyer before I make any kinds of comments or anything?" was ambiguous and equivocal, and therefore insufficient to invoke the defendant's right to counsel); Marcy Strauss, Understanding Davis v. United States, 40 Loy. L.A. L. Rev. 1011, 1035-37 (2007) (reporting that courts often conclude questions about a lawyer are ambiguous).

¶72 Courts frequently conclude that even fairly pointed statements about obtaining a lawyer, as opposed to questions, are nevertheless ambiguous and equivocal. For instance, the Court in Davis concluded that the statement "Maybe I should talk to a lawyer" was ambiguous and therefore did not constitute an invocation. 512 U.S. at 462. Applying Davis, we held in State v. Jennings, that the statement "I think maybe I need to talk to a lawyer" was insufficient to invoke the right to counsel. 2002 WI 44, ¶36, 252 Wis. 2d 228, 647 N.W.2d 142. As another example, in State v. Long, the court of appeals concluded that the defendant's statement "My attorney told me I shouldn't talk unless he is here" was an ambiguous and equivocal statement.

8

190 Wis. 2d 386, 397, 526 N.W.2d 826 (Ct. App. 1994).[4] See also State v. Parker, 886 S.W.2d 908, 918 (Mo. 1994) (concluding defendant's statement that he "ought to talk to an attorney" was not unambiguous invocation); Commonwealth v. Jones, 786 N.E.2d 1197, 1206 (Mass. 2003) (concluding defendant's statement that he was "going to need a lawyer sometime" did not constitute an unambiguous request for an attorney); Baker v. State, 214 S.W.3d 239, 243 (Ark. 2005) (concluding defendant's statements "I don't feel that I can talk to you without an attorney sitting right here to give—have them give me some legal advice" and "I think I'm going to need one. I mean, it looks like that" were ambiguous).

¶73 Significantly, the cases relied upon by the majority are clearly distinguishable from the facts and circumstances in the case at issue. See majority op., ¶36. The majority opinion relies upon Taylor and Lee to support its conclusion that "Can my attorney be present for this?" is an invocation of counsel.

---

[4] Two recent court of appeals cases provide persuasive authority reaffirming Wisconsin's adherence to a strict standard that a suspect must meet to invoke his or her Miranda rights. In State v. Smith, the court of appeals held that the defendant did not invoke his right to remain silent where he stated "I don't want to talk about this," referring to a specific line of questioning, but where he also indicated a willingness to continue discussing other matters. Smith, No. 2012AP520-CR, unpublished slip op., ¶¶8-10 (Wis. Ct. App. Jan. 23, 2013). In State v. Cummings, the court of appeals held that the defendant did not invoke his right to remain silent where he made the following statement during an interrogation: "Well, then, take me to my cell." Cummings, No. 2011AP1653-CR, unpublished slip op., ¶¶8-9 (Wis. Ct. App. Jan. 10, 2013).

Taylor v. State, 553 S.E.2d 598 (Ga. 2001); United States v. Lee, 413 F.3d 622 (7th Cir. 2005). However, in both Taylor and Lee, unlike the case at hand, the statements were made post-custody, post-Miranda warnings, and during interrogation. Taylor, 553 S.E.2d at 601-02; Lee, 413 F.3d at 624. Further, in Taylor and Lee, unlike the case at issue, the court relied heavily on the fact that law enforcement actually discouraged the suspects from obtaining a lawyer. Taylor, 553 S.E.2d at 602; Lee, 413 F.3d at 627. Law enforcement did not engage in any such conduct in the case at issue.

¶74 Other cases relied upon by the majority are likewise distinguishable especially due to the fact that the suspects' questions were asked post-Miranda warnings. In State v. Dumas, the court stated that the post-Miranda question "'Can I get a lawyer?' could be sufficiently clear in some circumstances to meet [the Davis] standard." 750 A.2d 420, 422, 425 (R.I. 2000) (emphasis added). However, the Dumas court concluded that the defendant's question in and of itself did not amount to an invocation. It remanded the matter for the trial court to consider the circumstances surrounding the defendant's question, including "the responses of the officers and any further utterances by defendant." Id. at 425. Here, the majority does not remand this case to the trial court to consider the officer's actions and further utterances by the defendant. The majority also cites Wysinger as support for its position. United States v. Wysinger, 683 F.3d 784, 795 (7th Cir. 2012). While it is true that Wysinger cites Lee, a case wherein the

10

post-<u>Miranda</u> question "Can I have a lawyer?" was deemed to be an unequivocal request for counsel, the facts in <u>Wysinger</u> are distinguishable from the facts before this court. <u>Id.</u> (quoting <u>United States v. Lee</u>, 413 F.3d 622, 624, 626 (7th Cir. 2005)). In fact, in <u>Wysinger</u>, the court concluded that the suspect's pre-<u>Miranda</u> question "Do I need a lawyer before we start talking?" was insufficient to invoke his right to counsel. 683 F.3d at 794-95. <u>See also</u> <u>Commonwealth v. Hilliard</u>, 613 S.E.2d 579 (Va. 2005) (holding that post-<u>Miranda</u> statement "Can I get a lawyer in here?" was sufficient to invoke the right to counsel).

¶75  I dissent because the majority opinion could be viewed as implicitly overruling well-established case law and because the cases cited by the majority opinion are distinguishable. If the majority intends to provide more protections to suspects by altering the standard to invoke the right to counsel or by tethering a subsequent interrogation to a previous arrest, the majority should make that clear.[5]  In any event, the majority

---

[5] In some cases, the Wisconsin Constitution has been interpreted to provide greater protections than the United States Constitution. For example, in <u>United States v. Patane</u>, 542 U.S. 630 (2004), the Supreme Court concluded that "the fruit of the poisonous tree doctrine does not extend to derivative evidence discovered as a result of a defendant's voluntary statements obtained without <u>Miranda</u> warnings." <u>State v. Knapp</u>, 2005 WI 127, ¶1, 285 Wis. 2d 86, 700 N.W.2d 899. The court in <u>Knapp</u> concluded that under the Wisconsin Constitution, the exclusionary rule barred physical fruits obtained from a deliberate <u>Miranda</u> violation. <u>Id.</u>, ¶2. However, this court has previously determined that "[w]e cannot discover any meaningful difference between the state and federal constitutional protections against compulsory self-incrimination." <u>State v. Jennings</u>, 2002 WI 44, ¶42, 252 Wis. 2d 228, 647 N.W.2d 142.

should outline the standard to be used when evaluating these invocations, especially given Shatzer and the likelihood that this scenario will recur. Unfortunately, the majority's decision is cabined to this one defendant's assertion, on this day, under these circumstances.

## B. Maryland v. Shatzer

¶76 Moreover, the majority opinion adopts Shatzer but lacks a thorough discussion of Shatzer and its limitation of Edwards.[6] See majority op., ¶31. Specifically, under Shatzer, the rule of Edwards——that a defendant who has invoked the right to counsel is not subject to further interrogation——is not applicable if the defendant has been out of custody for 14 days. Shatzer, 559 U.S. at 111-12 ("[W]hen it is determined that the defendant pleading Edwards has been out of custody for two weeks before the contested interrogation, the court is spared the fact-intensive inquiry into whether he ever, anywhere, asserted

---

[6] Though the majority opinion describes the rule of Shatzer as a constitutional rule, the court in Shatzer states that "[w]e have frequently emphasized that the Edwards rule is not a constitutional mandate, but judicially prescribed prophylaxis." Maryland v. Shatzer, 559 U.S. 98, 105 (2010); Edwards v. Arizona, 451 U.S. 477 (1981). Logically, any changes in the Edwards rule would similarly result in judicially-prescribed rules. See also Dickerson v. United States, 530 U.S. 428, 446 (2000) (Scalia, J. dissenting) (stating that the majority opinion in Dickerson describes Miranda as a constitutional decision and as constitutionally based, but never says that violating Miranda violates the Constitution). Clearly the language in the Fifth Amendment of the United States Constitution does not reference a 14-day break in custody. These rules are instead prophylactic protections pertaining to the Fifth Amendment.

12

his _Miranda_ right to counsel."). Thus, _Shatzer_ seemingly limited the _Edwards_ prohibition on a subsequent interrogation. In my view, the majority opinion could be viewed as one which diminishes the holding in _Shatzer_ because it relies so heavily on Edler's post-_Miranda_ invocation of counsel three weeks prior and on the fact that the same officer was involved in both arrests.

¶77 In this case, Edler had been out of custody for 19 days when he was arrested on April 20, 2011, for arson. Under the rule of _Shatzer_, the break in custody operated to reset the opportunity for law enforcement to interrogate Edler. Nonetheless, the majority focuses almost entirely on the previous invocation of counsel and the fact that the same officer was involved in both arrests. Majority op., ¶35. The analysis of whether Edler invoked his right to counsel by stating "Can my attorney be present for this?" should seemingly focus on the facts and circumstances surrounding Edler's statement as they existed on April 20, 2011, rather than a residual invocation from 21 days earlier. In relying on the facts related to the previous interrogations and on Urban's knowledge of the previous interrogations, the majority opinion could be diminishing the clean break rule of _Shatzer_. Instead, the majority opinion could be viewed as reviving the _Edwards_ rule of continued invocation of counsel, despite the rule of _Shatzer_. I would hope for more discussion regarding the legal implications of _Shatzer_ and of a previous invocation of counsel.

13

¶78 Given the majority's analysis, what place does Shatzer hold in our jurisprudence? Is the majority elevating the Edwards continued invocation rule over the Shatzer clean break rule? Is Wisconsin adopting its own version of Shatzer/Edwards? Does the majority conclude the question "Can my attorney be present for this?" in and of itself, is an invocation of the right to counsel? Does the majority limit its analysis to a situation where the same officer is involved in both arrests?

## C. Officer Conduct

¶79 Similarly, the majority's analysis of how a reasonable officer would understand Edler's question turns on knowledge gained by Urban three weeks earlier, when Edler invoked his right to counsel. See majority op., ¶35. Because the majority makes much of the fact that Urban was involved in both interrogations, the majority opinion is further limited. Id. Unfortunately, the majority does not clarify why it is so focused on Urban's knowledge from three weeks prior.

¶80 Considering that the circumstances of the prior interrogation are seminal to the majority's analysis, it is curious that the majority attaches no weight to the fact that Urban scrupulously honored Edler's prior invocation. Why does the majority assume that Urban has now failed to honor a request for counsel when he previously demonstrated that he would scrupulously honor such a request? See People v. Gonzalez, 104 P.3d 98, 107 (Cal. 2005) (stating that where interrogating officers knew the suspect had been read his Miranda rights on a prior occasion, "the police could reasonably have assumed that

14

defendant was capable of making an unequivocal request for counsel if he so desired").[7] Under the majority's analysis, Urban's knowledge that Edler was capable of invoking his right to counsel and Urban's history of honoring an invocation of counsel deserve no consideration.

¶81 In the earlier interrogation, Urban respected Edler's invocation by ceasing the interrogation, and when Edler made further statements, Urban acknowledged the invocation and told Edler "to be quiet" because he had invoked his right to counsel. In this subsequent arrest, about five minutes into the car ride, Edler asked "Can my attorney be present for this?" Urban responded "Yes he can." Compared to the earlier response, Urban's latter response suggests that he understood Edler to be asking a question about his rights rather than invoking his right to counsel.

¶82 Unlike law enforcement in Taylor and Lee, Urban did not attempt to dissuade Edler from obtaining a lawyer. Edler asked "Can my lawyer be present for this?" about five minutes

---

[7] See also State v. Markwardt, 2007 WI App 242, ¶36, 306 Wis. 2d 420, 742 N.W.2d 546 (stating that the rules for invocation of the right to remain silent, which are derived from Davis, do not leave room for reasonable competing inferences: "[A]n assertion that permits reasonable competing inferences demonstrates that a suspect did not sufficiently invoke the right to remain silent").

into the 20 minute car ride before any interrogation.[8] Here, Urban could very well have understood Edler to be asking a question about his rights.

¶83 Under Davis and Jennings, an officer is not required to stop an interrogation or to ask follow up questions about counsel if the suspect makes an ambiguous statement about an attorney, but this court has suggested that it is a good practice. See Jennings, 252 Wis. 2d 228, ¶32. Should we adopt a rule requiring law enforcement to clarify such pre-Miranda questions? Again, the majority opinion passes on this opportunity to provide such guidance to law enforcement.

¶84 From Urban's perspective, the statement made by Edler at the police station, whether he would sit in jail if he requested a lawyer, likely clarifies that Edler did not invoke

---

[8] The timing of Edler's question "Can my attorney be present for this?" could support that it was a clarification of his rights and not an invocation. See Davis, 512 U.S. at 461 (stating that the Court is "unwilling to create a third layer of prophylaxis to prevent police questioning when the suspect might want a lawyer"). For example, in State v. Fischer, before the police read the defendant his Miranda rights and before interrogation began, the defendant stated that if the officers read him his rights, he would not answer questions and would request an attorney. 2003 WI App 5, ¶19, 259 Wis. 2d 799, 656 N.W.2d 503. The court held that a "conditional and futuristic request for counsel is a statement that a reasonable officer in light of the circumstances would have understood only that [the defendant] might be invoking the right to counsel." Id. Since Edler's statement was made 20 minutes prior to the start of interrogation, Edler's statement could be viewed as conditional and futuristic similar to the statement in Fischer. See majority op., ¶32 n.11 (declining to clarify temporal standard that was left unsettled by State v. Hambly, 2008 WI 10, 307 Wis. 2d 98, 745 N.W.2d 48).

16

his right to counsel in the car. The majority opinion lacks any analysis of Edler's question regarding counsel at the station, during the time when Urban was reading the Miranda warnings, or his waiver of his Miranda rights. The majority does not consider how Urban made clear that he was not going to engage in discussion with Edler until he finished reading him his rights and Edler waived his rights. The majority does not discuss how Edler, not Urban, reinitiated the conversation by asking Urban a question. Urban was not interrogating Edler during the car ride or while he was reading the Miranda warnings.

¶85 As Edler had an attorney on a pending burglary charge, his question "Can my attorney be present for this?" may have been clarifying whether that particular attorney could be present for the forthcoming interrogation, even though he did not yet have an attorney on the uncharged arson. He also might have been asking whether he was entitled to have any attorney present during the interrogation.

¶86 Given the totality of the circumstances, the majority is too quick to conclude that law enforcement would objectively know that the question "Can my lawyer be present for this?" was an unambiguous invocation of counsel and that law enforcement erred by giving Edler his Miranda rights and accepting Edler's waiver. I do not conclude that a reasonable law enforcement officer, particularly one who is aware that Edler is capable of invoking his rights, would believe that the question "Can my attorney be present for this?" was an unambiguous request for counsel. Our court should provide guidance to law enforcement

17

by illuminating the standard applicable to a statement made post-custody, pre-<u>Miranda</u> warnings, pre-interrogation, and pre-waiver of <u>Miranda</u> rights.

### IV. CONCLUSION

¶87 I readily concede that Edler's question might have been a poorly-worded request for an attorney. Under the totality of the circumstances, however, it is just as likely that Edler's question was a clarification of his rights or something else. Precedent does not require the cessation of interrogation when a reasonable law enforcement officer believes the suspect <u>might</u> be invoking the right to counsel. <u>See Davis</u>, 512 U.S. at 459.

¶88 I dissent because the majority opinion neither extends <u>Davis</u> to Edler's statement nor enunciates the standard to apply. Simply stated, the majority opinion leaves open questions that are likely to recur. The majority opinion has not concluded that the "unambiguous and unequivocal" objective standard from <u>Davis</u> applies post-custody, pre-<u>Miranda</u> warnings, pre-interrogation, and pre-waiver of <u>Miranda</u> rights. The majority opinion does not determine whether interrogation must be impending for a suspect to invoke his right to counsel. The majority opinion leaves open whether law enforcement must clarify a potential request for counsel under these pre-<u>Miranda</u> circumstances. It remains unknown whether law enforcement should ever clarify a potential request by reading the suspect the <u>Miranda</u> warnings. The law is now less clear regarding the implications of <u>Shatzer</u> on <u>Edwards</u>. I write separately to

18

highlight that our court should be analyzing these issues with regard to Edler's question, which was made post-custody, pre-Miranda warnings, pre-interrogation, and pre-waiver of Miranda rights. We should clarify the law.

¶89 For the foregoing reasons, I respectfully concur in part and dissent in part.